MERCHANTS' & INSURERS' REPORTING CO. et al. v. JONES et al.
(two cases).

(Circuit Court of Appeals, Ninth Circuit. February 15, 1915.)

Nos. 2476, 2477.

CORPORATIONS ☞621—DISSOLUTION—APPOINTMENT OF RECEIVER.

In a suit by a California holding corporation against an Arizona insurance company, all of whose stock, with the exception of a few shares issued to individuals to qualify them as directors and officers, was held by the holding corporation, for the dissolution of the insurance company and for the appointment of its officers as trustees to wind up its affairs, in which the insurance company joined in the prayer for a dissolution, the allegations of an intervening complaint by a stockholder in the holding corporation and an accompanying affidavit as to the wasting of the assets and mismanagement of the affairs of the insurance company by its officers, the failure to collect its assets and to enforce notes of the president and other stockholders of the holding corporation turned over to the insurance company in payment for stock, and the disregard of an order of the Arizona Corporation Commission relating to the affairs of the insurance company, *held* to justify the appointment of a disinterested person as receiver of the insurance company's property.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2461–2469, 2471; Dec. Dig. ☞621.

Dissolution of foreign corporation, see note to Republican Mountain Silver Mines v. Brown, 7 C. C. A. 421.]

Appeal from the District Court of the United States for the District of Arizona; William A. Sawtelle, Judge.

Two actions, by the Merchants' & Insurers' Reporting Company, against the Bankers' Fire Insurance Company and the Phœnix Fire

Underwriters, respectively, in each of which actions F. A. Jones intervened. From an order in the first action appointing Lysander Cassidy as receiver of the Bankers' Fire Insurance Company, complainant and the Bankers' Fire Insurance Company appeal; and from an order in the second action appointing Lysander Cassidy as receiver of the Phœnix Fire Underwriters, the complainant and the Phœnix Fire Underwriters appeal. Affirmed.

Marshall Stimson, of Los Angeles, Cal., and F. C. Struckmeyer, Jos. S. Jenckes, Richard E. Sloan, William M. Seabury, and James Westervelt, all of Phœnix, Ariz., for appellants.

Stoneman & Ling, of Phœnix, Ariz., and Henry W. Nisbet, of Los Angeles, Cal., for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. These cases were submitted together under stipulation of the respective parties that the records in the two cases be used interchangeably, including the affidavits contained in case No. 2477, and that the judgment of this court therein apply to and be determinative of the companion case.

The suits were brought on the 25th day of October, 1913, by the Merchants' & Insurers' Reporting Company, a corporation organized under the laws of the state of California for the purpose of acquiring, holding, and owning stock in other corporations, which thereafter, according to the averments of the bills and the admission of the parties, acquired all of the stock of two fire insurance corporations that were organized under the laws of Arizona, namely, the Bankers' Fire Insurance Company and the Phœnix Fire Underwriters except four shares issued in the names of the persons who served as directors and officers of those corporations, of which shares the complainant, according to the allegations of the bills, was the equitable owner, one of which persons had, prior to the institution of the suits, ceased to be a director or officer, leaving three directors only, namely, Leroy H. Civille, C. S. Feldman, and Harry A. Davis, each of whom was a director of both of the insurance companies; Civille being president, Feldman vice president, and Davis secretary and treasurer, respectively, of each of them. The object of the bills was the winding up of the affairs of the insurance companies and the dissolution of them, and to that end they prayed, among other things, that Civille, Feldman, and Davis be appointed trustees of the properties of the defendant corporations for the purposes stated. On the same day that the bills were filed, the defendant corporations, respectively, appeared and answered, admitting all of the allegations of the bills, and also asking that they be dissolved.

When the cases came on for hearing the court took them under advisement, and thereafter one Jones, who was a holder of stock in the complainant corporation, asked leave to intervene in the suits and show cause why the prayers of the bills should not be granted, which leave was given by the court over the objections interposed on behalf of the complainant, and accordingly Jones filed a complaint in intervention in each suit—that against the Bankers' Fire Insurance Company alleging, among other things:

"That since on or about the month of February, 1913, the defendant company has not been engaged in the conduct of any business except the collection of certain outstanding notes, and that large amounts of money have been expended by the officers of said defendant in salaries of the officers and traveling expenses. That ever since said month of February, 1913, the officers of said defendant have been drawing large sums of money from the treasury of said company for alleged services, and have paid out large sums of money to attorneys as attorney's fees, and that said officers of said company have expended large sums of money for alleged traveling expenses, all of which said allowances and amounts have been expended from the funds of defendant company, and to the great loss of the stockholders of said company. That at a stockholders' meeting of said complainant, a majority of the stockholders, or over two-thirds of the issued stock of the complainant, was represented, and at said time it was agreed by said stockholders and the officers-elect that a dissolution of the defendant should immediately take place, and that the officers elected at said time pledged themselves and agreed with the stockholders that a dissolution of said defendant should be speedily obtained and that the assets of said company should be distributed to those entitled by law to receive the same. That since said time the officers of said defendant company have wasted the assets of said company, and have grossly mismanaged the affairs of said company to a large extent, and have wholly failed to take any steps toward a dissolution of said defendant before the institution of this action, and on or about the 15th day of September, 1913, various stockholders of the complainant herein filed a petition with the Arizona Corporation Commission, at the city of Phœnix, setting forth certain facts, and praying that said Corporation Commission take such steps and make such order or orders as would prevent the carrying on of any further business of the defendant, and would take such other steps as would be beneficial to your petitioners herein, and to the complainant and the defendant, and that the reason for the filing of said petition was to secure the aid and assistance of the Arizona Corporation Commission in taking such steps as would cause the dissolution of the defendant, and the carrying out of the agreement and understanding entered into by and between the officers of the defendant and its stockholders and prevent any further dissipation of the funds of said defendant, which said petition is hereto attached and made a part hereof, and prayed to be read in connection with this petition.

"That notwithstanding the fact that the officers elected at said stockholders' meeting held in the month of July, 1913, as aforesaid, agreed to and with the stockholders that immediate steps would be taken by them to secure the dissolution of the defendant herein, and the winding up of its affairs in an orderly and proper manner, no action was taken by said officers until the institution of this action, when for the purpose of carrying out a plan and scheme for further dissipating and expending the resources of the defendant, and thus depriving your petitioners and all of the other stockholders of the complainant and the owners of the assets of the defendant, the bill in equity herein was filed, and in said bill certain officers of said company, and the ones who have been instrumental and engaged in the dissipation of the funds and assets of the defendant, are asked to be by this honorable court constituted trustees for the purpose only of a dissolution of said defendant and the winding up of its said affairs.

"Wherefore, your petitioners pray that inasmuch as it appears from the record in this cause that both complainant and defendant desire that an order of dissolution be made dissolving the defendant and providing for the distribution of its assets to those lawfully entitled thereto, that they may be joined as defendants in this action, that a receiver be appointed by this honorable court under the rules thereof, who shall be empowered to speedily and without great expense directed to properly administer the affairs of the defendant, to the end that its assets shall not be further dissipated, and the same be distributed to those lawfully entitled thereto; and your petitioner will ever pray."

In support of the petition in intervention, the intervener filed the following affidavit:

"P. A. Parker, being duly sworn, says: That the complainant corporation was incorporated in the fore part of the year 1906, under the laws of the

state of California, with a capital stock of $500,000, divided into 50,000 shares, of a par value of $10 each. That at or about the time of its incorporation of said stock there was sold an amount thereof, for cash, to various and divers persons and individuals, in excess of $100,000. That there was also a large amount of said stock sold to various and divers persons and individuals for which they did not pay cash, but gave their promissory five-year notes therefor, which would mature, and which did mature, on the 1st day of July, 1913. Said promissory notes totaled to the amount of approximately $250,000, and in each individual case, where the stock was issued to the purchaser thereof, the same was not delivered to him, but was attached to said promissory note as collateral security therefor.

"That thereafter, on the 3d day of December, 1909, the defendant, to wit, Bankers' Fire Insurance Company, was incorporated under the laws of the then territory of Arizona, with a capital stock of $200,000, divided into 2,000 shares, of a par value of $100 each. That almost immediately thereafter the said complainant became the owner of all of the stock of the said defendant corporation, to wit, said 2,000 shares of stock, with the exception of 3 shares thereof, which were held by other persons to complete the board of directors of said defendant corporation. That in payment therefor the said complainant paid the sum of $5,000 in cash, and turned over to said defendant corporation of said promissory notes $195,000 thereof, which said notes thereupon became an asset of the defendant corporation.

"That the said defendant corporation, prior to the month of February, 1913, did a large insurance business, and issued policies of insurance to the stockholders of the complainant corporation and to others in excess of the sum of $600,000.

"That the only object and purpose of incorporation of complainant was to become a holding company of insurance companies, and that the purpose of the incorporation of the defendant was to engage in the fire insurance business. That about two years prior to the 1st day of July, 1913, one Robert Mitchell, an attorney at law of the city of Los Angeles, California, began an attack against the integrity and honor of both the complainant corporation and the defendant corporation, and persistently during said period of two years kept up said attack. That he wrote scurrilous articles concerning both of said corporations, in which he repeatedly referred to said corporations as fake corporations and fraudulent corporations, and that said Mitchell, in connection with other persons, succeeded in sowing such discord among the stockholders of complainant corporation that at the annual meeting of the stockholders of complainant corporation, held in the city of Los Angeles, California, in the month of July, 1913, a new board of directors were elected, who were at said meeting pledged to take immediate steps to bring about the dissolution of the defendant corporation, as well as the Phœnix Fire Underwriters, another insurance company incorporated under the laws of Arizona on the said 3d day of December, 1909, with a capital of $100,000, and of which said last corporation the complainant herein, soon after its incorporation, became the owner of all the stock thereof, with the exception of three shares which were held by other persons to fill the board of directors thereof. That notwithstanding the pledge upon which said new board of directors was elected, no steps whatsoever were taken to bring about the dissolution of the said two corporations, other than in the manner as appears of record herein. That no steps have ever been taken by the officers of the said Bankers' Fire Insurance Company, nor the Phœnix Fire Underwriters, at the instigation or solicitation of complainant, to liquidate the affairs of the said two corporations, by collecting in its assets or otherwise. That no attempt has been made by the officers of the defendant corporation to enforce payment of any of the promissory notes given as hereinabove stated, and turned over to the defendant corporation in payment for its stock as hereinbefore stated, notwithstanding the fact that said notes matured on the 1st day of July, 1913. That four of the board of directors of the complainant corporation, to wit, John Casteria, who is president of said corporation, Marshall Stimson, H. Y. Stanley, and F. W. Boynton, all stockholders of said corporation, gave their promissory notes for their stock, and have never paid any cash therefor, nor have they ever paid their said promissory notes, or any part thereof.

"That on the 21st day of October, 1913, the president of complainant cor-

poration, to wit, John Casteria, and the president of the Bankers' Fire Insurance Company, to wit, Leroy H. Civille, and the said Phœnix Fire Underwriters, by its president, Leroy H. Civille, ·made and entered into a contract with the Fireman's Fund Insurance Company whereby all of the insurance business held by the said two Arizona corporations, to wit, Bankers' Fire Insurance Company and the Phœnix Fire Underwriters, was rewritten with and taken over by the said Fireman's Fund Insurance Company at a great expense and loss to the said Arizona corporations, a copy of which said agreement is attached hereto, marked 'Exhibit A,' and made a part of this affidavit. That said agreement was entered into notwithstanding the fact that the Arizona Corporation Commission had made its order relating to the affairs of the defendant Bankers' Fire Insurance Company, a copy of which said order is attached hereto, marked 'Exhibit B,' and made a part of this affidavit, and that a similar order, at the same time, was made by said corporation commission concerning the affairs of the Phœnix Fire Underwriters. That the said Phœnix Fire Underwriters and the said defendant, the Bankers' Fire Insurance Company, are not now and have not been, since the month of February, 1913, engaged in any business whatsoever. That they have no income from any source, and that notwithstanding large amounts of money have been expended by the officers of said defendant corporation, as well as the Phœnix Fire Underwriters, in salaries of the officers and traveling expenses. That ever since the said month of February, 1913, the officers of said defendant corporation have been drawing large sums of money from the treasury of said company for alleged services, and have paid out large sums of money to attorneys for attorney's fees, and that said officers of said company have 'expended large .sums of money for alleged traveling expenses, all of which said allowance and amounts have been expended from the funds of defendant company and the Phœnix Fire Underwriters, to the great loss of the stockholders of complainant corporation. That stockholders of complainant corporation, although demand therefor has been made, have been refused access to the books of the defendant corporation, as well as the Phœnix Fire Underwriters, notwithstanding the fact that the complainant corporation is the owner of all of the stock of said two insurance corporations. That affiant is informed, and upon such information believes, that all of the directors of both the defendant corporation and the said Phœnix Fire Underwriters, each of which is composed of three directors, have resigned, with the exception of Leroy H. Civille, and that the said Leroy H. Civille is the sole and remaining director, or other officer, of either of said two insurance companies. That the said Leroy H. Civille is absolutely under the dominion and control and direction of the board of directors of complainant corporation. That since the election of the board of directors at the annual stockholders' meeting in July, 1913, at which a board of directors was elected as hereinbefore stated, the law firm of Mitchell & Slosson, the hereinbefore said Robert Mitchell being a member· of said firm, together with said Marshall Stimson, have been the attorneys for the complainant corporation, the defendant corporation, and the said Phœnix Fire Underwriters, and that the said Mitchell, notwithstanding his attack upon the said corporation as hereinbefore stated, is now directing, as legal adviser, the affairs of said corporations.

"That the defendant Bankers' Fire Insurance Company and the complainant corporation, by its officers and its said attorneys, are now engaged in maintaining costly and unnecessary suits in the courts of California, and that the assets of said corporation are being consumed in such litigation. That notwithstanding the fact that the defendant Bankers' Fire Insurance Company and the Phœnix Fire Underwriters were incorporated under the laws of Arizona, with the principal place of business of both of said corporations at Phœnix, Arizona, neither of said corporations maintain an office in Arizona. That the said Leroy H. Civille, president of both of said Arizona corporations, is a citizen of Los Angeles, California, and in conjunction with John Casteria, president of complainant corporation, is conducting and carrying on a general insurance and real estate business in the said city of Los Angeles. And affiant further says that the assets of both of said Arizona corporations, as well as all of the books and papers of both of said corporations, are in the city of Los Angeles, and without the state of Arizona.

"Affiant modifies this affidavit to the following extent: That one suit at law was instituted shortly after the election of the new board of directors in July, 1913, upon a promissory note given by one J. E. Youtz, in payment of stock in complainant corporation to the value of $11,000, and that as a preliminary to said suit the stock of said J. E. Youtz in complainant corporation, given as collateral security for said note, was sold as a pledge without notice of sale, for the sum of one cent a share, notwithstanding the fact that said stock was worth $10 a share, and that the said stock was bid in at the sale in the presence of said Leroy H. Civille, representing the defendant corporation; that the said stock was sold to a man named Wiser, and was not bid in for the benefit of defendant corporation."

The specific and material facts stated in the affidavit of Parker are uncontradicted, and in view of them it requires no argument to show that the court below was entirely right in appointing a disinterested person receiver of the properties of the defendant corporations.

In each case the orders appealed from are affirmed.